## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID BEDOYA** | **CIVIL ACTION** |
| **VERSUS** | **NO.    12-1816** |
| **ROBERT TANNER, WARDEN** | **SECTION: "A"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### I.    Procedural History

Petitioner, David Bedoya, is a convicted inmate currently incarcerated at the Winn Correctional Center in Winnfield, Louisiana.    On December 5, 2006, David Bedoya was charged by bill of information with one count of forcible rape in violation of La. Rev. Stat. § 14:42.1 and one count of second-degree kidnapping in violation La. Rev. Stat. § 14:44.1.[1]

On January 18, 2008, a jury found Bedoya guilty as charged.[2]    On February 19, 2008,

---

[1]  State Rec., Vol. 1 of 8, Bill of Information, 12/5/10.

[2]  State Rec., Vol. 1 of 8, Minute Entry, 1/16/08; Minute Entry, 1/17/08; Minute Entry, 1/18/08;

Bedoya was sentenced to 30 years at hard labor as to each count, to be served concurrently and without benefit of probation, parole, or suspension of sentence.[3]     Bedoya's motion to reconsider sentence was denied.[4]

On direct appeal, Bedoya asserted that: (1) the trial court erred by not declaring a mistrial when the prosecutor made an impermissible reference to petitioner's right to remain silent; (2) the sentence imposed was unduly excessive and not particularized to petitioner; (3) the trial court committed patent error when it failed to hold a hearing on the motion to reconsider sentence.[5]     On December 18, 2008, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence but remanded the case for the state district court to inform petitioner of the registration requirements as provided in La. Rev. Stat. § 15:543(A).[6]     Bedoya's petition for rehearing was denied.[7]

Bedoya filed a writ application with the Louisiana Supreme Court.[8]     On November 20, 2009, the Louisiana Supreme Court denied his application for a writ of certiorari.[9]     His conviction and sentence became final on February 18, 2010, when the 90-day period for

---

Verdict 1/18/08; State Rec., Vol. 3 of 8, Trial Transcript, 1/16/08; State Rec., Vol. 4 of 8, Trial Transcript (con't), 1/16/08; Trial Transcript, 1/17/08; State Rec., Vol. 5 of 8, Trial Transcript (con't), 1/17/08; Trial Transcript, 1/18/08; State Rec., Vol. 6 of 8, Trial Transcript (con't), 1/18/08.

[3]  State Rec., Vol. 1 of 8, Minute Entry, 2/19/08; State Rec., Vol. 6 of 8, Sentencing Transcript, 2/19/08.

[4]  State Rec., Vol. 7 of 8, Motion to Reconsider Sentence, 2/20/08; Order, 2/26/08.

[5]  State Rec., Vol. 6 of 8, Appeal Brief, 08/KA/0630, 8/20/08.

[6]  *State v. Bedoya*, 08–KA–630. (La. App. 5 12/16/08), 998 So.2d 1283; State Rec. of 8 of 8.

[7]  State Rec., Vol. 6 of 8, Petition for Rehearing, 08/KA/0630, 1/6/09 (postmarked 1/6/09); Louisiana Fifth Circuit Court of Appeal Clerk of Court Letter, 1/20/09.

[8]  State Rec., Vol. 8 of 8, Writ Application, 09 KO 484, 3/5/09 (postmarked 2/19/09).

[9]  *State v. Bedoya,* No. 2009-KO-0484 (La. 11/20/09), 25 So.3d 784; State Rec., Vol. 8 of 8.

seeking a writ of certiorari from the United States Supreme Court expired and he failed to apply for relief. *See* U.S. Sup. Ct. R. 13(1); *see also Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999); *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003).

On September 22, 2010, Bedoya filed with the state district court a motion for determination as to whether it was error to admit the victim's testimony at trial without a pretrial determination of voluntariness.[10]    On that same date he filed an application for post-conviction relief, in which he asserted the following six assignments of error: (1) prosecutorial misconduct based on: (a) repetitive and inflammatory introduction of copies photographs depicting the victim's injuries; (b) introduction of photographs of the screwdriver and crescent wrench; (c) unnecessarily focusing the jury's attention on the issue of petitioner's Colombian nationality; (d) eliciting prejudicial opinion testimony from the expert witness that was outside her field of expertise; (e) eliciting testimony from the expert witness to bolster the victim's testimony; (f) eliciting testimony from the expert witness that was tantamount to a pronouncement that petitioner kidnapped and raped the victim; (g) focusing the jury's attention on the issue of "invasiveness" of the medical pelvic examination; and (h) misstating evidence in its opening statement and closing argument; and (2) ineffective assistance of trial counsel in failing to: (a) object to hearsay evidence; (b) move to suppress evidence obtained from petitioner's home; (c) require the prosecution to produce the theory or methodology of its expert opinion testimony; and (d) object to the non-use of certified interpretation of the conversation between petitioner and the victim with respect

---

[10]   State Rec., Vol. 1 of 8, Motion for Determination as to Whether it was Error to Admit the State's Principal Witness'/Victim's Testimony at Movant's Trial on the Merits Absent a Pretrial Determination of Voluntariness, 9/22/10.

to the home video.[11]    He claimed his failure to raise his claims of prosecutorial misconduct was due to ineffective assistance of appellate counsel.[12]    On December 15, 2010, Bedoya filed an objection to the State's response claiming it was untimely.[13]    On December 20, 2010, the state district court denied Bedoya's application, finding his reasons for failing to pursue his claims of prosecutorial misconduct on appeal meritless and, as a result, his prosecutorial misconduct claims procedurally barred under La. Code Crim. P. art 930.4(C) and his claims of ineffective assistance of counsel meritless.[14]    On January 4, 2011, the state district court found nothing in Bedoya's "objection" affected its ruling.[15]    Petitioner filed a motion for reconsideration and alternatively requested to re-file or amend his original petition, which the state district court denied on February 9, 2011.[16]

On January 27, 2011, the petitioner filed a timely writ application with the Louisiana Fifth Circuit Court of Appeal.[17]    On March 24, 2011, the Louisiana Fifth Circuit granted the writ for the limited purpose of ordering the district court to rule on petitioner's motions to

[11]    State Rec., Vol. 1 of 8, Uniform Application for Post-Conviction Relief and Memorandum in Support of Petition, 9/22/10.    Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).    The post-conviction application made a part of the state record was signed and dated September 22, 2010.

[12]    State Rec., Vol. 1 of 8, Uniform Application for Post-Conviction Relief and Memorandum in Support of Petition, p. 4, 9/22/10.

[13]    State Rec., Vol. 1 of 8, Objection to State's Response, 12/20/10 (dated 12/15/10).

[14]    State Rec., Vol. 1 of 8, Order, 12/20/10.

[15]    State Rec., Vol. 1 of 8, Order, 1/4/11.

[16]    State Rec., Vol. 1 of 8, Petition for Reconsideration of Application for Post-Conviction Relief, 1/20/11; Order, 2/9/11.

[17]    State Rec. Supp. Vol. 1of 1, Application for Supervisory Writ of Review, 11-KH-105, 2/3/11 (postmarked 1/27/11).

amend and supplement his pleadings and to determine whether it was error to admit the victim's testimony without a pretrial hearing if it had not already done so, but found that the state district court correctly denied petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel.[18]    On April 19, 2011, petitioner filed a writ application with the Louisiana Supreme Court in which he addressed only his claims of prosecutorial misconduct.[19]    The Louisiana Supreme Court denied relief without stated reasons on March 23, 2012.[20]

In the interim, on April 5, 2011, the state district court denied petitioner's motion relating to whether it was error to admit the victim's testimony at trial without a pretrial determination of voluntariness, finding that the victim's statements were not subject to suppression as there was no state actor and therefore no constitutional protection.[21]    It also denied petitioner's motion to amend and supplement, finding that any future supplemental filings were subject to the statutory provisions of La. Code Crim. P. art 924 *et seq.*[22]    Petitioner filed a related writ application with the Louisiana Fifth Circuit on May 17, 2011.[23]    On June 17, 2011, the Louisiana Fifth Circuit denied relief finding no error in the state district court's April 5, 2011 ruling.[24]    Petitioner filed a writ application with the

---

[18]  State Rec., Vol. 1 of 8, *Bedoya v. State*, No. 11-KH-105 (La. App. 5 Cir. 2/24/11) (unpublished).

[19]  State Rec., Vol. 8 of 8, Writ Application, 11 KH 829, 4/26/11 (dated 4/19/11).

[20]  *State ex rel. Bedoya v. State*, 2011-KH-0829 (La. 3/23/12), 84 So.3d 563; State Rec., Vol. 8 of 8.

[21]  State Rec., Vol. 1 of 8, Order, 4/5/11.

[22]  *Id.*

[23]  State Rec., Supp. Vol. 1 of 1, Writ Application, 11-KH-521, 5/17/11 (postmarked 5/11/11).

[24]  *Bedoya v. State*, 11-KH-521 (La 7/17/11); State Rec., Vol. 8 of 8.

Louisiana Supreme Court on July1, 2011.[25]    On April 9, 2012, the Louisiana Supreme Court denied petitioner's related writ application.[26]

On July 2, 2012, Bedoya filed his original application for *habeas corpus* relief.[27]    In that application, Bedoya claims (1) prosecutorial misconduct in (a) the repetitive and inflammatory introduction of copies photographs depicting the victim's injuries; (b) introduction of irrelevant photographs of a screwdriver and crescent wrench; (c) unnecessarily focusing the jury's attention on the issue of petitioner's Colombian nationality; (d) eliciting prejudicial opinion testimony from the expert witness that was outside her field of expertise; (e) eliciting testimony from the expert witness to bolster the victim's testimony; (f) eliciting testimony from the expert witness that was tantamount to a pronouncement that petitioner kidnapped and raped the victim; (g) focusing the jury's attention on the issue of "invasiveness" of the medical pelvic examination; (h) misstating evidence in opening statement and closing argument; (2) ineffective assistance of trial counsel in (a) failing to object to hearsay testimony of Dr. Lottinger; (b) failing to move to suppress the evidence obtained from the search on his residence on the basis that the search and seizure exceeded his consent; (c) failing to require the prosecution to produce the theory or methodology of its expert opinion testimony; and (d) object to the non-use of certified interpretation of the conversation between petitioner and the victim; and (3) it was error to admit the victim's testimony at trial without a pretrial determination of voluntariness.

---

[25]   State Rec., Vol. 8 of 8, Writ Application, 11 KH 1494, 7/8/11 (executed 7/1/11).

[26]   *State ex rel. Bedoya v. State*, 2011-KH-1494 (La. 4/9/12), 85 So.3d 137; State Rec., Vol. 8 of 8.

[27]   Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus*, dated July 11, 2012 (signed 7/2/12).

The State filed a response in which it claimed that petitioner failed to exhaust his ineffective assistance of trial counsel claims.[28]   Bedoya responded that his limited ability to speak and understand English and as well as the legal assistance he received prevented him from exhausting his claims and he therefore sought a stay of proceedings.[29]   The Court granted Bedoya's request for a stay to complete exhaustion of his ineffective assistance of trial counsel claims.[30]

On February 19, 2013, petitioner sought reconsideration of the Louisiana Supreme Court's March 23, 2012 denial of Writ No. 11-KH-829 by filing an application for writ of certiorari in that case which he styled "For Exhaustion of Claims Presented in Original Application for Post-Conviction Relief for Satisfaction of the Federal Court There Is a Stay Pending in Federal Court for Exhaustion of These Claims Presented Herein," wherein he sought to have his claims of ineffective assistance of trial counsel reviewed.[31]   On September 22, 2017, the Louisiana Supreme Court refused to consider the writ application citing La. S. Ct. Rule IX, § 6.[32]

On January 25, 2018, this Court lifted the stay.[33]   Bedoya retained counsel who, on April 5, 2018, filed an amended and supplemental petition in which he adopted the previous claims and raised an additional claim that: (4) petitioner's constitutional rights were violated

[28]   Rec. Doc. 14.

[29]   Rec. Doc. 15.

[30]   Rec. Doc. 20.

[31]   State Rec., Supp. Vol. 1 of 1, Application for Writ of Certiorari, 2011-KH-0829, 2/19/13.

[32]   *State ex rel. Bedoya, v. State*, 2011-KH-0829, (La. 9/22/17), 227 So.3d 823; State Rec., Supp. Vol. 1 of 1.

[33]   Rec. Doc. 25.

by the failure to appoint a certified and qualified interpreter to assist him during trial as well as by the failure to have a certified interpreter interpret the audio of the home video.[34] Counsel also included further argument relating to the prosecutorial misconduct based on introduction of opinion testimony by an expert in a field other than her expertise and the prosecution's alleged false representation of the victim's immigration status in closing argument.[35]

The State filed a response in which it contends that Bedoya did not properly exhaust state-court review of his ineffective assistance of trial counsel issues and the issues are now in technical procedural default.   The State also argues that Bedoya failed to exhaust his claims relating to the failure to appoint a certified interpreter and the failure to have a certified interpreter interpret the home video audio, and that those claims are technically procedurally defaulted.[36]   It contends that petitioner's remaining prosecutorial misconduct claims are procedurally defaulted under La. Code Crim.. P. art. 930.4(C).   It claims petitioner's remaining claim relating to the admission of the victim's testimony without a pretrial determination of voluntariness is meritless.

Bedoya, through his retained counsel, filed a traverse in which he contends he has shown cause and prejudice as to the claims relating to the failure to appoint a certified interpreter to assist him at trial and the victim's testimony interpreting the verbal exchanges that occurred during the recording of the sex video.[37]   The traverse does not address the

---

[34]  Rec. Doc. 37.

[35]  *Id.*

[36]  Rec. Doc. 40.

[37]  Rec. Doc. 43.

8

failure to exhaust the ineffective assistance of counsel claims or the procedural default of the prosecutorial misconduct claims.

## II.    Facts

On direct appeal, the Louisiana Fifth Circuit summarized the facts adduced at trial as follows:

> On the evening of July 1, 2006, P.S., the victim, testified that she met her estranged husband, defendant, at a laundromat to return his wallet, which he had dropped during a confrontation at her apartment complex earlier that morning.[1]    Prior to meeting defendant, P.S. left a note for her roommate stating that if something bad happened to her, defendant was responsible. P.S. left a picture of defendant with the note.
>
> > [1] Initials are used under the authority of LSA–R.S. 46:1844(W)(3), which allows the Court to identify a victim of a sex offense by using his or her initials.
>
> According to P.S., after she returned the wallet to defendant, he grabbed her and forced her into his car, which was being driven by his friend.    P.S. stated that defendant lay on top of her, put his hands around her neck, put a razor in her mouth, and told her that if she yelled, she would cut herself. Approximately 35–40 minutes later, they stopped at a Wal–Mart where defendant bought a video camera.    P.S. explained that she did not try to escape while in the Wal–Mart because she was scared and defendant told her he would bring her home if she cooperated.
>
> Instead of taking P.S. home after leaving Wal–Mart, defendant brought P.S. to his apartment in Bridge City, where he forced her inside and locked all the doors.[2]    P.S. testified she screamed and hit the walls, but defendant told her the neighbors were not home.    She stated defendant proceeded to beat her with various objects, including plastic rubberized floor molding, a handsaw, and a belt. P.S. also stated defendant tied a rope around her neck and hands and tied her to a window while he read the instructions for the video camera. P.S. testified that she believed defendant was going to kill her.
>
> > [2] Of note, defendant referred to his residence as being in Westwego. However, Detective Cummings testified defendant resided on Oak Ave. in Bridge City and the arrest report lists the address as being located in Bridge City.
>
> P.S. stated that after defendant beat her, he told her they were going to have sex at which time he turned on the video camera.    He told P.S. to give him oral sex and told her she was going to enjoy it.    P.S. did not want to have sex with defendant, but complied because she was scared and thought it was the only way defendant would release her.    The videotape was shown to the jury and depicted defendant and P.S. having sex.    P.S. explained she tried to

9

make defendant believe she was enjoying the sex so he would not hurt her anymore.    P.S. testified that after defendant videotaped them having sex, he continued to beat her.    At some point, defendant made P.S. call her roommate and tell her they were having a honeymoon and to tell her roommate to stop calling the police because P.S. wanted to stay with defendant.

The next morning defendant brought P.S. to Sonic to get some food and told her not to scream.    P.S. testified that as they were leaving Sonic, defendant called her sister and made P.S. tell her she and defendant were back together and on a honeymoon and for her not to call the police.    P.S. stated defendant then grabbed her hair and put her head under his leg.    She started fighting defendant and managed to kick the car door and escape.    She ran to a nearby house where a lady called the police.

The police arrived and defendant was arrested.    Defendant was advised of his rights and indicated he was willing to talk to the police.    He stated P.S. was his wife and that the two were simply having an argument. When defendant learned P.S. alleged he raped her, defendant told police about the videotape and claimed it would show he did not rape her.    He then consented to a search of his apartment, during which P.S. identified various objects defendant used in the assault.

P.S. was taken to the hospital for a sexual assault exam.    Dr. Roberta Lottinger conducted the exam and testified at trial that she independently remembered P.S. because of her extent of trauma.    She stated P.S. had extensive bruising on her lower and upper extremities consistent with carpenter's instruments, a mouth laceration consistent with a razor, a shoulder abrasion made with a serrated instrument such as a handsaw, and neck trauma consistent with a rope.    Dr. Lottinger explained the bruises were fresh.

Defendant testified at trial and denied he forced P.S. to go anywhere with him.    He stated he suggested they go to Wal–Mart to buy a video camera to record the two of them having sex, but denies ever threatening P.S. Defendant stated he and P.S. later had an argument at his apartment.    He admitted hitting her with his hand, a belt, and "another white thing," but claimed it was a reaction to her pulling his earring.    Defendant specifically denied tying P.S. up with a rope, hitting her with a handsaw, beating her all night and forcing her to have sex with him.    Defendant testified P.S. ran from his car the next morning when they were leaving Sonic because he told her he withdrew her immigration application, which was the only way P.S. could stay in the country.[38]

---

[38]*State v. Bedoya*, 08–KA–630 (La. App. 5 12/16/08), 998 So.2d 1283, 1285-86.    State Rec. of 8 of 8.

### III.    Preliminary Review: Exhaustion and Procedural Default

A petitioner normally must first exhaust his remedies in the state courts before seeking habeas corpus relief from the federal courts.    28 U.S.C. § 2254(b)(1)(A); *see also Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982) ).    "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."    *Whitehead*, 157 F.3d at 387.

A petitioner properly exhausts state remedies only by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.    *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) (requiring state prisoners, in order to fully exhaust their claims, "to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State").    "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.

Furthermore, a petitioner's federal claim must have been "fairly presented" at each level of the state-court system.    *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).    "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."    *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) ).    "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."    *Whitehead*, 157 F.3d at 387 (citing *Nobles v. Johnson*, 127 F.3d 409, 420 (5th

Cir. 1997) ).    Nor is the fair-presentation standard satisfied if the state court must read

beyond the petition or brief, for instance to a lower-court opinion, to identify the claim.

*Baldwin*, 541 U.S. at 32.

### A.  Failure to Exhaust

Bedoya did not raise his claims relating to the failure to appoint a certified interpreter

or the failure to have a certified interpreter translate the audio on the home video to any

state court.    He raised his claims of ineffective assistance of trial counsel in his application

for post-conviction relief and in his related writ application to the Louisiana Fifth Circuit.

He did not, however, raise those claims in his original writ application to the Louisiana

Supreme Court.    After this Court stayed this case in order for him to exhaust his claim,

Bedoya attempted to raise these issues in his February 2013 writ application to the

Louisiana Supreme Court. [39]    The Louisiana Supreme Court declined to consider the

application citing La. S. Ct. Rule IX § 6.

> As the United States Fifth Circuit has explained:
>
> Fair presentation does not entertain presenting claims "for the first and only
> time in a procedural context in which its merits will not be considered unless
> there are special and important reasons therefor."    *Castille v. Peoples*, 489
> U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (quotation marks
> omitted). The purposes of the exhaustion requirement "would be no less
> frustrated were we to allow federal review to a prisoner who had presented
> his claim to the state court, but in such a manner that the state court could not,
> consistent with its own procedural rules, have entertained it."    *Edwards v.
> Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

*Carty v. Thaler*, 583 F.3d 244, 254 (5th Cir. 2009).

Under the circumstances, it appears the State's contention that Bedoya's ineffective-

---

[39]  Rec. Doc. 40.

assistance of trial counsel claims and his claims relating to the failure to appoint a certified interpreter and have the audio on the home video translated by a certified interpreter have never been fairly presented to the state courts in a procedurally proper manner and remain unexhausted, is correct.    *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—the applicant has exhausted the remedies available in the courts of the State...."); *Spellman v. Cain*, Civ. Action No. 15-824, 2016 WL 2637658, at *3-4 (E.D. La. Feb. 19, 2016), *report and recommendation adopted*, 2016 WL 2594837 (E.D. La. May 5, 2016); *Carty*, 583 F.3d at 253-54 ("When undertaking review, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts.").

As the State notes in its response, Bedoya's failure to exhaust these claims in state court presents an additional problem and basis for dismissal of his federal habeas claim, *i.e.*, a procedural bar in federal court.    If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court and must be dismissed.    *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).

The record in this case reflects that Bedoya is now unable to litigate his unexhausted claims in the Louisiana courts.    *See* La. Code Crim. P. arts. 930.4 and 930.8.    A habeas petitioner who has defaulted his federal claims in state court meets the technical

requirements for exhaustion, because there are no state remedies any longer "available" to him.    *Gray v. Netherl*and, 518 U.S. 152, 161-162 (1996); see 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (citing *Engle v. Isaac*, 456 U.S. 107, 125-126, n.28 (1982)).    The United States Supreme Court has determined that the exhaustion requirement " 'refers only to remedies still available at the time of the federal petition,' [and] it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.' " (emphasis added, citations omitted)    *Gray*, 518 U.S. at 161-62 (quoting *Engle*, 456 U.S. at 125 n.28, and *Castille v. Peoples*, 489 U.S. 346, 351 (1989) ).

As the state-court review of Bedoya's unexhausted claims must be deemed technically exhausted, the claims must be evaluated for procedural default.    *See Gray*, 518 U.S. at 162 ("... the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim ..."); *Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas ...").

The procedural bar created by a petitioner's created technical exhaustion stands as an adequate and independent state procedural ground and prevents federal habeas corpus review of a defaulted claim.    *Gray*, 518 U.S. at 162; *see also*, *Coleman*, 501 U.S. at 735 n.1; *Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).    The State, however, has not addressed or considered the propriety of a procedural bar to the ineffective assistance of trial counsel claims under the United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), and *Trevino v. Thaler*, 569 U.S. 413, 133

S.Ct. 1911, 185 L.Ed.2d 1044 (2013).[40]    The Court need not require argument on this point, however, because the unexhausted ineffective assistance of trial counsel claims are not substantial and are wholly meritless, and this Court will dispose of the claims on the merits. 28 U.S.C. § 2254(b)(2).

In the interest of judicial economy, the Court will address the procedural bar to petitioner's claims relating to the failure to appoint a certified interpreter and use that interpreter when playing the home video for the jury and his other defaulted claim in the following section of this report.

### B.  Procedural Default

In addition to his unexhausted claims relating to the failure to appoint a certified interpreter and use an interpreter to translate the audio on the home video, the state courts imposed a procedural bar to Bedoya's claims of prosecutorial misconduct.    The state district court found the claims to be procedurally barred under Louisiana Code of Criminal Procedure article 930.4(C) because he failed to raise the claims on appeal and his reasons for not previously raising the claims were without merit.[41]    The Louisiana Fifth Circuit ruled that the district court correctly denied Bedoya's claims of prosecutorial misconduct. The Louisiana Supreme Court denied Bedoya's related writ application without explanation. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (when the

---

[40]    In *Martinez*, the Supreme Court held that a procedural bar imposed by a state court " 'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.' "    *Trevino*, 569 U.S. at 417, 133 S.Ct. 1911 (quoting *Martinez*, 566 U.S. at 17, 132 S.Ct. 1309).    As shown in this report, Bedoya has no substantial claim of ineffective assistance of trial counsel that would provide any relief under *Martinez*.

[41]    State Rec., Vol. 1 of 8, Order, p. 1, 12/20/10.

last state-court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

 1. Independent and Adequate

 The Court must consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of Bedoya's first claim on federal habeas corpus review. For a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

 The state courts relied upon Louisiana Code of Criminal Procedure article 930.4(C). It is well-settled that article 930.4 (C) qualifies as an independent and adequate rule to support a procedural bar in federal court. *See e.g., Parks v. Cain*, Civ. Action No. 12–02972014 WL 505329, at *8 (E.D. La. Feb. 6, 2014); *Lewis v. Cain*, Civil Action No. 09-3240, 2010 WL 4363546, at *9 (E.D. La. Aug. 19, 2010) (Chasez, MJ.), *report and recommendation adopted*, 2010 WL 4340795 (E.D. La. Oct. 21, 2010) (Feldman, J.); *Hurd v. Cain*, Civ. Action No. 09-3112, 2009 WL 3063354, at *7 (E.D. La. Sept. 23, 2009) (Lemmon, J.); *Simmons v. Cain*, Civ. Action No. 06–2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, Civ. Action No. 05–0929, 2006 WL 5507856, at *8 (E.D. La. Oct. 17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as modified on other grounds by Monroe v. Cain*, 05–0929, 2008 WL 818968, at *1 (E.D. La. Mar. 24, 2008) (Berrigan, J.). Here, the state-court ruling was based on Louisiana law setting forth the requirements for preservation and presentation of

claims on post-conviction review.    The ruling was independent of federal law and relied strictly on state procedural requirements.

Moreover, the statutory grounds cited above qualify as an "adequate" procedural ground because the state rule is "firmly established and regularly followed."    *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)); *see also Glover v. Cain*, 128 F.3d at 902 (To be considered "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases). State procedural rules enjoy a presumption of adequacy when the state court expressly relies upon them in deciding not to review a claim, and the burden is on the petitioner to demonstrate otherwise.    *Glover*, 128 F.3d at 902; *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).    The state courts' reasons for dismissal of Bedoya's prosecutorial misconduct claims were therefore independent of federal law and adequate to bar review of his claims in this Court.

  2.  Cause and Prejudice

In order to overcome the procedural-default doctrine, Bedoya must demonstrate "cause" for the default and prejudice resulting from the default, or show that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice.    *Amos v. Scott*, 61 F.3d at 339 (citations omitted).    To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.    *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Bedoya appears to attribute the procedural default of his prosecutorial misconduct claims to his appellate counsel's failure to assert the issues on direct appeal.    Ineffective

17

assistance of counsel may in some circumstances serve as cause to overcome a procedural bar.    *See Murray*, 477 U.S. at 489 (where an ineffective assistance claim has independently been presented to state courts, it may be used to establish cause for a procedural default)." However, as will be discussed later in this report, Bedoya's claims of ineffective assistance of appellate counsel are without merit and do not constitute cause for his default.    *Romero v. Collins,* 961 F.2d 1181, 1183 (5th Cir. 1992); *Bella v. Cain*, Civ. Action No. 12-2323, 2015 WL 1311216, at *16 (E.D. La. Mar. 23, 2015); *Arita v. Cain*, Civ. Action No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), *adopted*, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), *aff'd*, 500 F. App'x 352 (5th Cir. 2012).

Bedoya also suggests that he did not have an opportunity to review the trial record or file a supplemental brief on direct appeal and that he received "several different forms of legal assistance."    It is well settled, however, that neither pro se status nor ignorance of the law is sufficient cause to excuse a procedural default.    *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

As for his claims relating to the failure to appoint a certified interpreter and allowing the victim to interpret the conversation on the videotape, petitioner suggests that the "newness," "obscurity," and "novelty" of the claims constitutes cause for his failure to previously raise the claims.    The Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claims in a procedurally proper manner.    Nor does the record reflect any action or inaction on the part of the State that prevented him from doing so.    Bedoya has not established cause for his default, and, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

### 3.  Fundamental Miscarriage of Justice

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.    *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) ).    To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."    *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Glover*, 128 F.3d at 902.    To satisfy this standard, a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."    *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).    To show factual innocence, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.    *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n. 33 (actual-innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

Bedoya points to no new evidence that would show his actual innocence of the crimes for which he was convicted.    The Court recognizes that he submitted the victim's November 16, 2006 I-360 form seeking classification as an abused spouse of a U.S. resident under the Violence Against Women Act, which was apparently granted, and her resulting I-485 form for an adjustment to permanent resident status signed December 4, 2007.[42]

---

[42]    Rec. Doc. 29, Exhs. 3 and 4 (under seal).    The exhibits do not include the approval notice of the I-360 petition.

While he attacks the credibility of the victim, as he did at trial, neither of these forms is sufficient to show that it was more likely than not that no reasonable juror would have convicted Bedoya.     Bedoya's attack on the credibility of the victim along with his argument that she had made up the kidnapping and rape claims so that she could remain in the United States were presented to the jury and resolved against him.     Thus, Bedoya has failed to overcome the procedural bar to his claims, and the foregoing claims should be dismissed with prejudice as procedurally barred.

**IV.     Standards of Review on the Merits**

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.     A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.     The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1) ] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.  *Williams v. Taylor*, 529 U.S. 362, 405B06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).  An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.  A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").   "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents

defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).    For unexhausted claims that were not considered on the merits in the state courts, the pre-AEDPA standard of review applies.    *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits) ); *see also Carty v. Thaler*, 583 F.3d at 253.

## V.    Analysis of Claims for Relief

### A.    Ineffective Assistance of Trial Counsel (Claim 2)

Bedoya asserts that he was denied effective assistance of trial counsel for failing to object to hearsay evidence included in the sexual assault report; move to suppress evidence seized from petitioner's residence in excess of the consent granted; request a *Daubert* hearing to determine Dr. Lottinger's theory and analysis of the victim's behavior; and object to the State's failure to use a certified interpretation of the conversation between Bedoya and the victim on the home video.

The United States Supreme Court has established a two-part test for evaluating claims of ineffective assistance of counsel.    *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Id.* at 687.    A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980

F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner, and must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.    *Id.* at 689.

The prejudice prong requires "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."    *Id.* at 687.    To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Id.* at 694.    In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."    *Id.*    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.*, deficient performance or actual prejudice, it may dispose of the ineffective-assistance claim without addressing the other prong.    *Id.* at 697.

Bedoya first claims that his trial counsel should have objected to the admission of the report of the medical examination of the victim as well as Dr. Lottinger's testimony regarding portions of the report that were written by a resident who did not testify at trial.

At trial, Dr. Lottinger testified that he and a resident, Dr. Luu, performed a sexual-

assault exam of the victim on July 2, 2006, and that a report was prepared in connection with the exam.[43]    Dr. Lottinger explained that some of the notes were his and some were written by Dr. Luu, but that they prepared the report together.[44]    Dr. Lottinger explained that Dr. Luu wrote that the victim claimed she was "raped by my ex-husband" and documented the signs of physical trauma, which included a notation that the that the victim received a "punch" to the face.[45]

While Dr. Lottinger's testimony included explanation of notations made by Dr. Luu, Dr. Lottinger explained he was present the entire time when the victim's history was being taken and both he and Dr. Luu spoke with the victim.[46]    Dr. Lottinger confirmed that the victim reported she was raped by her husband after being beaten and that she reported both oral and vaginal penetration.[47]    Dr. Lottinger explained that the physical exam was consistent with an extensive beating.[48]    When defense counsel questioned Dr. Lottinger about Dr. Luu's notation that the victim had facial bruises from a "punch," Dr. Lottinger explained that Dr. Luu's English was "not very good" and that he could not say whether the notation implying a single punch was due to Dr. Luu's poor English, but that there was evidence of at least four contusions on the victim's face.[49]

---

[43]  State Rec., Vol. 5 of 8, Trial Transcript, pp.63-65, 1/18/08.

[44]  *Id.*, at 65-66.

[45]  *Id.*, at pp. 67, 86, 89, 94.

[46]  *Id.*, at pp. 83-85.

[47]  *Id.*, at pp. 65, 86.

[48]  *Id.*, at pp. 88-89.

[49]  *Id.*, at p. 94.

There was no basis for defense counsel to object to the admission of the medical report, as it was admissible under La. Code. Evid. art. 803(4).[50]    As for defense counsel's failure to object to Dr. Lottinger's testimony regarding Dr. Luu's notations on the report, Bedoya fails to show any prejudice.    Again, Dr. Lottinger testified that he was present for the victim's interview and examination and confirmed the information in the report was either given by the victim during the interview or observed upon examination.    While Bedoya speculates that the jury may have been confused by Dr. Lottinger's testimony and that Dr. Luu would have testified that the victim was punched in the face only once, it is well-settled that he must present more than conclusory assertions to establish ineffective assistance of counsel.[51]    *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Bedoya next contends that his defense counsel should have moved to suppress all evidence taken from his residence other than the home videocassette.    The record demonstrates that defense counsel filed several motions to suppress the evidence, as well as a motion to suppress the confession.[52]    The state district court held a hearing after which

---

[50]  "Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment" are not excluded by the hearsay rule, even though the declarant is available as a witness.    La Code Evid. art. 803(4).

[51]  To the extent Bedoya suggests that his trial counsel should have subpoenaed Dr. Luu to testify, he fails to establish that the witness was actually available and or that such testimony would have been favorable to the defense.    *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense).

[52]  State Rec., Vol. 2 of 8, Motion to Quash and to Suppress Evidence, 12/15/06; Motion to Suppress Evidence, 4/18/07; Motion to Suppress to Confession, 4/19/07.

it denied the motions.[53]

The evidence of record demonstrates that, during the search of his residence, officers removed a Sony videocassette recorder, a rope, a pair of scissors, and a hand saw.[54]     Bedoya claims that counsel should have argued that the Bedoya only authorized a search for the seizure of the videotape.     At the hearing, defense counsel contested the validity of the consent to the search.[55]     The evidence at the hearing demonstrated that petitioner executed a consent form providing:

> I hereby authorize members of the Jefferson Parish Sheriff's Office to conduct a complete search of 1044 Oak Ave, Bridge City, LA.     The officers are authorized by me to take from my premises/vehicle here as specified *any letter, paper, materials or other property which the officer may deem appropriate.*[56]

The state district court, in denying the motion to suppress, implicitly found that Bedoya freely and voluntarily consented to the search.     As Bedoya's consent to the search was not limited to the seizure of the videocassette, there was no basis for his counsel to argue that the seizure of the other items was beyond the scope of Bedoya's consent.     Counsel's failure to file such a motion therefore did not fall below an objective standard of reasonableness and did not cause Bedoya to suffer prejudice.     *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("[f]ailure to raise meritless objections is not

---

[53]  State Rec., Vol. 2 of 8, Hearing Transcript, 7/23/07.

[54]  *Id.*, at pp. 18, 43-44.

[55]  *Id.*, at pp. 41-42.

[56]  *Id.*, at p. 17; State Rec., Vol. 1 of 8, Jefferson Parish Sheriff's Office Consent Search Form, 7/2/06 (emphasis added).

ineffective lawyering; it is the very opposite.").

Bedoya's third claim of ineffective assistance of trial counsel is that counsel failed to request a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), regarding Dr. Lottinger's expert testimony. At trial, counsel stipulated that Dr. Lottinger was an expert in the field of gynecology and sexual assault.[57]

In *Daubert*, the United States Supreme Court supplanted the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" to ensure the relevance and reliability of scientific expert testimony. *Daubert*, 509 U.S. at 592. Once expert testimony is admitted at trial, it is for the jury to resolve the credibility and the reliability of the expert's testimony. " '[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.' " *Primrose Operating Co. v. Natl. American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United State v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)). The Louisiana Supreme Court has adopted the *Daubert* analysis only in instances where the methodology used by an expert is being questioned. *State v. Foret*, 628 So. 2d 1116, 1121, 1123 (La. 1993); *see also Dinett v. Lakeside Hospit*al, 811 So. 2d 116, 119 (La. App. 4th Cir. 2002).

In this case, Dr. Lottinger primarily testified as a fact witness because of her observation and examination of the victim after the incident. She testified about the bruises and cuts she observed as well as the victim's demeanor. Her methodology was not

---

[57] State Rec., Vol. 5 of 8, Trial Transcript, p. 61, 1/18/08.

at issue.

Presumably defense counsel made a strategic choice to enter into a stipulation that Dr. Lottinger was an expert in the field of gynecology and sexual assault.    Where a stipulation is a concession of facts which the State could have easily established at trial and no advantage would have inured to a petitioner had counsel refused to enter the stipulation, counsel is not ineffective when he enters into such a stipulation.    *See Berry v. King*, 765 F.2d 451, 454–55 (5th Cir. 1985); *McGee v. Cain*, Civ. Action No. 06–11360, 2007 WL 4591227, at *12 (E.D. La. Dec. 26, 2007); *Parker v. 24th Judicial District Court*, Civ. Action No. 06–10551, 2007 WL 2893852, at *6 (E.D. La. Sept. 27, 2007).    Here, the prosecution could have easily established that Dr. Lottinger was an expert in the fields of gynecology and sexual assault. She testified that she was an Associate Professor of Obstetrics and Gynecology at Tulane University School of Medicine and the Director of Community Relations at Tulane Lakeside Hospital and had dealings in the sexual-assault program.[58]    She further testified that she performs sexual-assault examinations and had performed one on the victim.[59]    She estimated that she had performed over 100,000 pelvic exams in her over 20 years of practice.[60]    Bedoya simply has not shown that defense counsel could have successfully challenged Dr. Lottinger's qualifications.    Counsel is not ineffective for electing not to pursue a futile *Daubert* motion.    *See Shields v. Dretke*, 122 F. App'x 133, 153 (5th Cir. 2005); *see also Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012).

Bedoya primarily appears to complain that Dr. Lottinger should not have been able

---

[58]    *Id.*, at p. 62.

[59]    *Id.*, at p. 63.

[60]    *Id.*, at p. 82.

to testify regarding the victim's demeanor and that it was consistent with someone who had been kidnapped, assaulted and raped.    Dr. Lottinger testified that the victim was "extremely calm" but had a blunt or depressed affect, meaning she was withdrawn and quiet and did not make eye contact.[61]    The following exchange occurred on direct examination:

> Q.    And her type of reaction or demeanor, in your opinion, was that consistent with somebody who's been extremely traumatized?
>
> A.    Yes.    I believe it was because of the severity of the trauma that was inflicted on her.
>
> Q.    That would not be unusual, in your expert opinion, for somebody who had gone through all of those injuries and trauma to act that way?
>
> A.    That's correct.    It's a little bit different than our usual rape or sexual assault patients.    They are frequently angry and crying.    She was not. Other patients are frequently under the influence of alcohol or other substances at the time, and that wasn't the case with her.    And I believe that her demeanor was because of the extent of the physical trauma.
>
> Q.    Okay.    And this particular case stood out in your mind why?
>
> A.    Why I remember her so clearly?
>
> Q.    Right.
>
> A.    Because of the extent of the physical trauma.
>
> Q.    And you do not see that normally when they come in.
>
> A.    Some rape victims have physical trauma, but not to this extent.    I've never seen a patient with this extent of physical bearing.
>
> Q.    And her demeanor would be consistent with the allegation that she reported.
>
> A.    Yes, sir.[62]

---

[61]    *Id.*, at pp. 76, 86.

[62]    *Id*, at pp. 76-77.

Dr. Lottinger further testified that the results of the examination and the history recorded was consistent with the victim having been physically and emotionally traumatized and raped.[63]     On re-direct, Dr. Lottinger confirmed that in her opinion, the victim had been physically and emotionally traumatized and raped.[64]

Dr. Lottinger's testimony pertaining to the victim's demeanor was based upon her observations.     Her testimony that the victim's demeanor, while different than that of many sexual assault victims, was consistent with severe trauma was based on her experience with rape victims.     Therefore, there was no basis to object.

With regard to Dr. Lottinger's opinion that the victim's demeanor and the findings upon examination was consistent with the victim's allegations, La. Code Evid. art. 704 bars an expert witness from expressing an opinion as to the guilt or innocence of the accused. The article also states that "[t]estimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact."     *Id.*     Nonetheless, an expert's opinion regarding the victim's credibility is improper.     *Foret*, 620 So.2d at 1130.

While Dr. Lottinger did not expressly state that the victim was credible, her opinion that the victim had been raped bolstered the victim's credibility.     Regardless, Bedoya has failed to show prejudice resulting from his counsel's failure to object to the testimony. There was other evidence to establish Bedoya's guilt beyond a reasonable doubt.     Dr. Lottinger testified that she had "never seen a patient with this extent of physical beating."[65]

---

[63] *Id.,* at p. 81.

[64] *Id.,* at pp. 99-100

[65] *Id.,* at p. 77.

There was medical evidence, including cuts and extensive bruising, that was consistent with the victim's testimony that she was beaten into submission.    Ms. Judd, from whom the victim sought shelter when she ran from Bedoya's truck, testified that the victim told her she had been raped. [66]    Detective Cummings testified that the victim was very upset and frightened and expressed concern that Bedoya would return and harm her.[67]

The jury heard the Bedoya's audiotaped statement to law enforcement and was able to read the accompanying transcript.[68]    The jury was also able to view the home video depicting the incident.[69]    Finally, the jury was able to hear Bedoya's testimony and view his demeanor at trial.[70]

---

[66]  State Rec., Vol. 5 of 8, Trial Transcript (con't), pp. 133, 129, 1/17/08.

[67]  State Rec., Vol. 4 of 8, Trial Transcript, pp. 36, 48, 1/17/08.

[68]  *Id.*, at pp. 65-66.    While the audiotape and accompanying transcript are not part of the state-court record, the record reflects that Bedoya told law enforcement that he taped the victim because she liked it and he liked how sexy she gets and she likes it and gets sexy when it happens.    State Rec., Vol. 6 of 8, Trial Transcript (con't), p. 161, 1/18/08.

[69]  State Rec., Vol. 5 of 6, Trial Transcript (con't), pp. 198-224, 1/17/08.    The trial court noted at sentencing, "I want the Record to be very clear that any appellate court that looks at this case, they need to look at the videotape which [Bedoya] created, the first ten to twenty seconds.    It speaks volumes."    State Rec., Vol. 6 of 8, Sentencing Transcript, p. 13, 2/19/08.

[70]  The record reflects that, while on the witness stand, Bedoya got out of his seat.    State Rec., Vol.6 of 8, Trial Transcript (con't), pp. 154-156, 1/18/08.    A short recess was taken for defense counsel to speak to Bedoya about this demeanor.    *Id.*    At sentencing, the trial court explained that:

The other thing that I've taken into consideration is your demeanor when testifying at trial.    Your ex-wife described your demeanor and how you treated her on that date.    And during an instance of your testimony here in court, you displayed that same personality.

I think the record is clear, you stood up, you grabbed the microphone, and you began pointing at the jury and repeating yourself in some pretty direct terms.    And that Record is clear.

State Rec., Vol. 6 of 8, Sentencing Transcript, p. 13, 1/19/08.

Bedoya's final claim of ineffective assistance of trial counsel is based on the failure to object to the State's failure to use a certified interpretation of the audio on the home video.[71]

At the trial, defense counsel acknowledged that he had in his possession a certified transcription of the conversation and/or comments of the victim and Bedoya that could be heard on the home video.[72]    Prior to opening statements, defense counsel advised the trial court, "I think the biggest issue we have is how to set up the videotape.    I don't think we've reached an agreement on how that's going to be handled about what's being said." [73] Defense counsel advised that he would discuss the matter with the prosecution and determine whether he wanted the court interpreter to interpret the video as it was played to the jury.[74]    The following day, defense counsel again admitted that the audio had been translated and transcribed and that he had reviewed it with his client but claimed that "there were big gaps of things which were not translated."[75]    He advised that he did <u>not</u> want the court interpreter to interpret the audio as she could interpret it differently than what was already transcribed.[76]

Ultimately, the home video, which included the audio, was played for the jury but was not interpreted by the court interpreter nor was the written transcript used.[77]    The

---

[71]  Both the victim and Bedoya were native Spanish speakers and the statements they made were in Spanish.

[72]  State Rec., Vol. 5 of 8, Trial Transcript (con't), p. 159, 1/17/08.

[73]  State Rec., Vol. 4 of 8, Trial Transcript, p. 326, 1/16/08.

[74]  *Id.*, at p. 327.

[75]  State Rec., Vol. 5 of 8, Trial Transcript, pp. 159-60, 1/17/08.

[76]  *Id.*

[77]  *Id.*, at pp. 195-96, 198.

prosecution played the video a second time and asked the victim to explain the statements made by Bedoya and her.[78]    While defense counsel did not question the victim about any of the statements made on the home video, defense counsel extensively cross-examined the victim and attacked her credibility.[79]

Defense counsel's decision to not have the audio interpreted by the court interpreter and to not object to the victim's interpretation of the comments made was a matter of sound trial strategy.    As defense counsel pointed out, there were comments that were not included in the transcript and it was possible that the court interpreter could have interpreted any of the comments differently and to the detriment of petitioner. Additionally, defense counsel may have elected not to use the transcript of the audio because it did not include translation of all the comments made.[80]    For these reasons, Bedoya has not established deficient performance by his counsel.    He also has not demonstrated any prejudice arising from his counsel's failure to have the audio interpreted for the jury by the court interpreter rather than the victim or through his cross-examination of the victim. Bedoya, who is a native Spanish speaker and was present at trial, fails to point to any discrepancy between the statements heard on the video and the victim's translation of the statements.

---

[78]   *Id.*, at pp. 199-224.

[79]   State Rec., Vol. 5 of 8, Trial Transcript, pp. 5-57, 1/18/08.

[80]   State Rec., Vol. 5 of 8, Trial Transcript, pp. 159-60, 1/17/08.

Accordingly, for the reasons expressed, Bedoya not demonstrated that trial counsel's performance was deficient or that he was prejudiced.    He is not entitled to federal habeas relief on this claim.

B.    *Ineffective Assistance of Appellate Counsel (Cause for Claim 1)*

As previously explained, as cause for the procedural default of his claims of prosecutorial misconduct, Bedoya claims ineffective assistance of appellate counsel for failing to raise the claims on appeal.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right.    *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).    The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel.    *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997).    In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [ ] defendant."    *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).    When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal."    *Duhmel*, 955 F.2d at 967. However, failing to raise every meritorious claim on appeal does not make counsel deficient. *Green v. Johnso*n, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynau*gh, 873 F.2d 830, 840 (5th Cir. 1989)).    Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness."    *Id.* at 1037. Courts give great deference to professional appellate strategy and applaud counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues...."    *Jones v. Barnes*, 463 U.S. 745 (1983).    This is true even where the weaker arguments have merit.    *Id.* at 751–2.    Instead, the applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal.    *See, e.g., Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith*

*v. Robbins*, 528 U.S. 259, 288 (2000).

Because it appears that the state courts rejected Bedoya's ineffective assistance of appellate counsel claims on the merits[81] and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

Trial counsel did not object to the admission of the photographs depicting the victim's injuries or those showing the screwdriver and wrench.[82] During opening statements, trial counsel objected to a single comment by the prosecution (which was sustained),[83] but did not object to any of the comments Bedoya contends constituted prosecutorial misconduct.[84] Trial counsel did not object to the victim's testimony regarding Bedoya having lived in Colombia.[85] In fact, defense counsel admitted in his opening statement that, while Bedoya

---

[81] The state district court found Bedoya's reasons for raising his claims on appeal were without merit. State Rec., Vol. 1 of 8, Order, 12/20/10. The Louisiana Fifth Circuit found he had the opportunity to state his reasons for failing to urge his prosecutorial misconduct claims on appeal and that he failed to meet the *Strickland* standard. *Bedoya v. State*, No. 11-KH-105 (La. App. 5 Cir. 2/24/11); State Rec., Vol. 1 of 8. The Louisiana Supreme Court denied relief without stated reasons. *State ex rel. Bedoya v. State*, 2011-KH-0829 (La. 3/23/12), 84 So.3d 563; State Rec., Vol. 8 of 8.

[82] St. Rec. Vol. 4 of 8, Trial Transcript, pp. 38, 40, 42; 49-52, 1/17/08; Rec. Doc. 1, pp. 22-30.

[83] St. Rec. Vol. 4 of 8, Trial Transcript (con't), pp. 342-43, 1/16/08.

[84] *Id.*, at pp. 330-343; Rec. Doc. 1, p. 33.

[85] St. Rec. Vol. 5, Trial Transcript (con't), p. 222, 1/17/08.

is a United States citizen, he was educated in Colombia and Bedoya testified that he was born in New York but moved to Colombia when he was two or three years only and lived there for nearly twenty years, returning to the United States in 2001.[86]    Bedoya's trial counsel did not object to Dr. Lottinger's testimony of which Bedoya complains.[87]    Finally, defense counsel did not object to the prosecution's closing or rebuttal arguments.[88]

An objection would have been necessary to preserve error for review on direct appeal.    La. Code Crim. P. art 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.")    As indicated, in the instant case, there was no contemporaneous objection to these purported errors.    Without the claims being properly preserved for review on direct appeal, appellate counsel was not in a position to raise the claims on appeal and, if they nevertheless had been raised, the Court of Appeal would have rejected them as procedurally defaulted.    Appellate counsel cannot be considered ineffective "in declining to raise an unreviewable issue."    *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001); *accord Weatherspoon v. Cockrell*, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011) ("[A]ppellate counsel was precluded from raising this claim because there had been no contemporaneous objection at trial.    Therefore, appellate counsel was not deficient for failing to raise the issue on appeal, and petitioner suffered no prejudice.    Accordingly, petitioner's instant claim fails because he cannot show a reasonable probability that he would have prevailed on appeal if the issue had been

---

[86]    St. Rec. Vol. 4, Trial Transcript (con't), p. 345, 1/16/08; St Rec. Vol. 5 of 8, Trial Transcript, pp. 105-06, 1/18/08.

[87]    St. Rec. Vol. 5, Trial Transcript, pp. 62-81, 1/18/08

[88]    St. Rec. Vol. 6 of 8, Trial Transcript (con't), pp, 168-176, 194-202, 1/18/08.

raised.") (citations omitted), *adopted*, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); *Arceneaux v. Cain*, Civ. Action No. 06-3964, 2009 WL 917429, at *10 (E.D. La. Mar. 31, 2009) ("Where appellate review of a claim would be barred due to the absence of a contemporaneous objection, appellate counsel is not ineffective for failing to assert the claim."); *Taylor v. Holliday*, Civ. Action No. 06-4118, 2008 WL 5146505, at *8 (E.D. La. Dec. 4, 2008) (petitioner failed to demonstrate ineffective assistance of appellate counsel when issue was not preserved for appeal.).

For the foregoing, reasons, Bedoya has not shown any deficient performance by appellate counsel or any prejudice caused by counsel's failure to assert his claims of prosecutorial misconduct.    His ineffective assistance of appellate counsel claims, therefore, do not constitute cause for his procedural default of his prosecutorial misconduct claims. *Romero*, 961 F.2d at 1183.

C.      *Failure to Conduct a Voluntariness Hearing (Claim No. 3)*

Bedoya contends that the state trial court erred in admitting into evidence inculpatory statements he made to the victim without holding a pretrial voluntariness hearing.[89]

In its April 5, 2011 order, the state district court denied the claim explaining:

> Defendant argues that the statements he made to the victim were inadmissible at trial because they were not voluntary, and should have been subject to a suppression hearing.    The court finds no merit to this claim, as the inculpatory statements made to the victim were not subject to suppression, as there was no state actor and thus no constitutional

---

[89]    Bedoya's counseled motions to suppress statements made to law enforcement and motion to suppress the evidence were denied after a hearing on September 23, 2007.    State Rec., Vol. 2 of 8, Motion to Suppress the Confession, 4/19/07; Motion to Suppress the Evidence, 4/19/07; Transcript, 7/23/07; Minute Entry, 7/23/07.    Bedoya does not assert a claim relating to the denial of those motions.

protection.[90]

The Louisiana Fifth Circuit found no error in the ruling and the Louisiana Supreme Court denied relief without stated reasons.

To the extent Bedoya asserts that his statements to the victim were improperly admitted into evidence in violation of state law, that claim is not cognizable on federal habeas review.    *See Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).    Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.    *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

To the extent that he contends that his statements should have been suppressed because the trial court failed to determine whether he voluntarily made the statements, his reliance on *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619 (1972), is misplaced.    In *Miranda*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444 (emphasis added).    Custodial interrogation consists of questioning by law enforcement agents "after a person has been taken into custody."    *Id*.    The "term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to

---

[90]   State Rec., Vol. 1 of 8, Order, 4/5/11.

elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980).    An incriminating response is "any statement—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial.    *Id.* at 301 n. 5.

In accordance with *Twomey*, "[t]he defendant is entitled to "object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession ."    404 U.S. at 483-84.

In this case, *Miranda* concerns were not triggered by the statements Bedoya made to the victim during the course of the criminal activity.    Bedoya's statements were not a result of a custodial interrogation by law enforcement.    As a result, *Miranda* and *Twomey* simply do not apply.

Accordingly, the state court's denial of relief on this claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### **RECOMMENDATION**

**IT IS RECOMMENDED** that Bedoya's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[91]

New Orleans, Louisiana, this ___20th___ day of _____February_____ 2019.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[91] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.